STATE *v.* DEAN BARNETT.

November Term, 1938.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed January 7, 1939.

*C. O. Granai* for the respondent.

*Webster E. Miller,* State's Attorney, for the State.

JEFFORDS, J. It appears from the findings of fact made and filed that the respondent was originally brought before the Barre municipal court charged with a violation of the statute relating to leaving the scene of an accident, now P. L. § 5156, which reads as follows:

> "The operator of a motor vehicle who has caused or is involved in an accident resulting in injury to any person or property, other than the vehicle then under his control or its occupants, shall immedi-

ately stop and render such assistance as may be reasonably necessary,'' etc.

The accident happened September 20, 1929. On September 23, 1929, the respondent entered a plea of not guilty and the case was continued to October 18th when the plea was withdrawn and a plea of *nolo contendere* was entered. On this plea the sentence of the court was that the respondent pay a fine of $100 and costs of $18.40 and that he be imprisoned in the house of correction for a term of not less than 18 months nor more than 2 years.

The fine and costs were paid and the respondent was placed on probation under the usual conditions, with the additional condition that the respondent should make restitution of $10 per week for the benefit of E. J. Dunn. Such payments to be made as follows: $10 on the 21st of October, 1929, and $10 each week thereafter until further order of the court.

The condition as to probation was originally brought about by agreement of the respondent in conformity with a written communication presented to the court and filed there in words and figures as follows:

"St. Johnsbury, Vt.
October 13, 1929.

Hon. H. Wm. Scott

Dear Judge:

If it meets with your approval I would like to have Dean Barnett put on probation, on condition that said Dean Barnett pay me, or into court for my benefit the sum of ($1500) Fifteen Hundred payable at least $10.00 per week until the amount is fully paid. And the same shall be received by me in full settlement of my claim against Dean Barnett for all injuries received by me Sept. 20, 1929.

Very truly yours,
E. J. Dunn.

Witness:
David S. Conant.''

Thereafterwards the respondent paid into court from time to time $10 per week, as ordered, until the sum of $1,060 had been paid.

On September 12, 1931, the state probation officer filed in court a petition for the discharge of the respondent from probation. This petition was considered by the court on that same day and denied.

On September 10, 1937, the executive director of probation and parole wrote to the court asking for information. This letter was replied to by two letters from the court.

On November 15, 1937, the state probation officer filed in court a petition for a warrant and the same was issued and respondent brought before the court. Upon hearing it was considered and adjudged that the former order of $10 per week be amended to be $10 per month until the further sum of $440 be paid, the first payment to be on December 1, 1937. The department of probation and parole was advised as to the amendment of the order.

On January 22, 1938, the court reported to the probation department that the last order had not been complied with and asked that the matter be fully and further investigated and report made.

On March 3, 1938, a new complaint by the state probation officer was filed and warrant issued and the respondent was brought before the court. The case was continued from time to time and the orders extended and on March 14, 1938, $20 was paid into court on the order under protest.

The order still not being complied with, on May 4, 1938, the state probation officer signed an additional complaint alleging in addition to the usual form that on the 3rd day of March, 1938, before the Caledonia municipal court the said respondent pleaded guilty to intoxication and paid a fine and costs. The respondent was again brought before the court on May 4, 1938, when the case was partially heard and thereafter continued from time to time to June 17th, at which time it was further considered and adjudged by the court that the respondent had violated the conditions of his probation in that he had not complied with the order of the court to pay $10 per month restitution for the benefit of E. J. Dunn as ordered by the court on Nov. 15, 1937, under paragraph 7 of the conditions of probation.

It was further considered and adjudged by the court that the respondent had further violated the terms of his probation in that he had not abstained from the use of intoxicating liquor,

in that he had become intoxicated and arrested therefor and did enter a plea before the Caledonia municipal court on March 3, 1938, on which plea he was duly adjudged guilty and fined.

The court further found that at no time from Oct. 14, 1929, to June 17, 1938, had the Barre municipal court released and discharged the said respondent from the conditions of the probation imposed and agreed to by him on the said 14th day of October, 1929.

The court rendered judgment against the respondent and ordered that he serve not less than 18 months nor more than 2 years in the house of correction at Windsor.

The respondent excepted to the various findings of the court. Although stated in several ways, these exceptions in substance amount to this: That the court was without power to impose the condition of payment to Dunn in that there is no law upon which to base it and the same is contrary to the spirit and letter of the law and against public policy. That the imposing of this condition was duress and an abuse of discretion on the part of the court. That by making such order the court in a criminal case made itself a collection agency for a private debt. That the continuing of the probation period for so long a time and the various hearings and the amendment to the order show positively that the probation period was extended for the purpose of collecting money. That the continuing of the probation period in this case for so long a time is against public policy.

The final exception of the respondent was to the effect that the court was without jurisdiction to impose the conditions of probation in that the conditions were not within the law and that the period of probation was unduly prolonged in the collection of a private debt existing between the respondent and a third party.

■ The record does not show that any exception was taken to the judgment but that does not preclude us from considering exceptions properly raised to the findings upon which the validity of the judgment depends when, as here, such exceptions are brought before us by the bill of exceptions. *Fuller & Co.* v. *Morrison et al.,* 106 Vt. 22, 169 Atl. 9; *Conn Boston Co.* v. *Griswold,* 104 Vt. 89, 94, 157 Atl. 57; *Brown* v. *Vermont Mutual Fire Ins. Co.,* 92 Vt. 272, 274, 102 Atl. 1042; *Estabrooks* v.

*Fidelity Mut. Ins. Co.,* 74 Vt. 202, 52 Atl. 420; 4 C. J. S. 735, § 337.

This must be especially so when a jurisdictional question is raised, for such a question may be raised at any stage of a case and is never out of time. *Fuller & Co.* v. *Morrison et al., supra; Miner's Executrix* v. *Shanasy et al.,* 92 Vt. 110, 102 Atl. 480; *Kelley* v. *Moretown,* 71 Vt. 340, 45 Atl. 224.

The court in making the condition of payment to Dunn apparently acted under what is now P. L. sec. 8872, which provides that the court after passing sentence may then suspend all or part of such sentence and place the person so convicted and sentenced in the care and custody of the state probation officer under such conditions and for such time as it may prescribe, or until further order of court.

By P. L. sec. 8873 it is provided that the court placing a person on probation, at its discretion, at any time during the term of probation, may enlarge, alter or amend its conditions or extend the term thereof or discharge such person from the care and custody of the state probation officer. This same provision was in effect at the time the respondent was placed on probation and thereafter.

Very few cases can be found bearing on the question of the validity of certain conditions of probation and the effect on the sentence if a condition be determined to be illegal.

Placing one on probation is akin to the issuance of a conditional pardon. But there is a distinction between the two not here material as is pointed out in *State* v. *Hardin,* 183 N. C: 815, 112 S. E. 593.

It is generally held that a conditional pardon can be granted upon any terms or conditions provided the same are not illegal, immoral, or impossible of performance. *Ex parte Davenport,* 110 Tex. Cr. R. 326, 7 S. W. (2d) 589, 60 A. L. R. 1403. And see cases collected in annotation, 60 A. L. R. 1410 *et seq.*

We have applied the same test with the additional restriction that the condition be not unreasonable. *In re Conditional Discharge of Convicts,* 73 Vt. 414, 419, 420, 51 Atl. 10, 56 L. R. A. 658; *In re Gordon,* 105 Vt. 277, 279, 165 Atl. 905.

Among the conditions held legal in the cases cited in the annotation, *supra,* are that the respondent leave the state or coun-

try, maintain good behavior, pay the cost of trial and that he make full restitution to the government.

The case having to do with this last condition is that of *Bradford* v. *U. S.*, 228 U. S. 446, 57 L. ed. 912, 33 Sup. Ct. 576. The petitioner had been convicted of defrauding the government of certain public lands. He was granted a pardon on condition that he make full restitution to the satisfaction of the district attorney. He claimed that by the terms of the restitution agreement made with the district attorney the latter bound the government to reimburse him for improvements made to the land. It was held that the district attorney had no power so to bind and that the restitution agreement was valid and binding on him.

The cases that we have found dealing with probation have to do mostly with petitions to set aside and vacate a certain condition contained in the terms of probation.

Under the Georgia statute the court may permit the serving of the sentence outside a place of detention in such manner and on such conditions as it may see fit. Several cases having to do with this statute have come to our attention.

In *Swanson* v. *State*, 38 Ga. App. 386, 144 S. E. 49, it appears that the respondent had been convicted of fornication. One condition imposed was that he pay four hundred dollars within a certain time for the support of the child. The respondent moved to set aside and vacate this portion of the sentence on the ground that it was void and without authority of law as not coming within the statute.

The court held that the language of the statute was very broad and that it would not say that the portion of the sentence complained of was not authorized by the terms of the act.

In *Roberts* v. *State*, 41 Ga. App. 364, 152 S. E. 921, it was held that the condition that the respondent pay fifty dollars to one Bentley for damage to his automobile was valid. The respondent had been convicted of intoxication and there was evidence in the record that while so intoxicated he had damaged Bentley's car.

*Davis* v. *State*, 53 Ga. App. 325, 185 S. E. 400, has to do with a conviction for the violation of a statute forbidding the disposing of a crop on which there is a lien. One Freeman was the prosecutor. There was evidence in the case as to the amount due

from the respondent to Freeman. One condition imposed was that the respondent pay seventy dollars to Freeman as partial compensation.

The court said that probation conditions unless illegal or unreasonable should be upheld. It was held that this one was not illegal and considering the nature of the crime not unreasonable.

In *People* v. *Smith*, 252 Mich. 4, 232 N. W. 397, it was held that the condition that the respondent move out of the neighborhood was without authority of law and the case was remanded for such sentence or order as to the trial court should seem meet.

In the case of *People* v. *Funk*, 117 Misc. 778, 193 N. Y. S. 302, it appears that the respondent was convicted of petty larceny of $3.80. Between trial and sentence it was learned that she had stolen in all about fifteen hundred dollars. She agreed to make restitution of this latter amount if she were not sent to prison. Sentence was suspended and the respondent was ordered to make restitution. She made several payments and then appealed and asked for a reversal and that the order of restitution be vacated on the ground that the city court had no power to make it.

The court construed the reparation section of the code which provided that the court could order a defendant to make restitution or reparation to the aggrieved parties in an amount to be fixed by the court not to exceed the actual losses or damages caused by his offense and held that ''offense'' meant only the offense for which the defendant was on trial which in this case was for stealing $3.80 and that the court had no power to order beyond that amount. The judgment of conviction was reversed and the case sent back for a new trial under a section of the Code of Criminal Procedure.

In the North Carolina case of *State* v. *Hardin*, 183 N. C. 815, 112 S. E. 593, sentence was suspended on condition of good behavior and also that respondent pay two hundred dollars to the public prosecutor as reimbursement for counsel fees paid. Later respondent was ordered to show cause as to the good behavior condition. No question was made as to the validity of the two hundred dollar order.

Under the Code of New Mexico it was provided that the court may in its discretion suspend sentence upon such terms

and conditions as it shall deem proper. In the case of *Ex parte Hamm,* 24 N. M. 33, 172 Pac. 190, L. R. A. 1918D, 694, the court, referring to the above section, said that this section gave the court very broad powers and that (page 191): "The provision was designed as a reformatory measure, and the discretion of the court is without limitation as to the terms upon which the sentence will be suspended." The condition in this case was that of "good behavior" and the court held it had not been violated.

We have no previous decision from our Court bearing on this question of the validity of probation conditions.

We recognize that the courts should be allowed wide discretion in the imposing of such conditions but we do not agree with the statement of the court in the case last cited that such discretion is without limitation.

Whether we adopt the test laid down in the conditional pardon cases above referred to or that laid down in *Davis* v. *State, supra,* it appears from both that a condition must be legal. We will therefore determine whether the condition in question is or is not legal.

Apparently the court concluded and the State claims that this condition is one of restitution. The respondent claims it is not, that it is the making of the court in a criminal action a collection agency to enforce a claim of a private nature and hence void as against public policy.

We have reason to believe that it has been the practice of our courts to make as a condition of probation an order that the respondent make restitution in the way of returning money or chattels which have been stolen or otherwise unlawfully acquired. As far as we are aware, except in the present case, the courts of this State have not gone beyond this requirement of a return of the thing taken.

Restitution is defined in Webster's New International Dictionary as the act of restoring; restoration. Restoration of anything to its rightful owner; act of making good; or of giving an equivalent for any loss, damage or injury; indemnification.

It can be seen from this definition that restitution may go beyond the act of returning the thing taken.

But if we take this definition and apply it to restitution conditions in probation cases it is apparent that the restitution

must be for loss sustained as a direct consequence of the commission of the particular crime of which the respondent stands convicted. This was the situation in the case of *Bradford* v. *U. S.* and the Georgia cases cited *supra.* This rule was recognized in the case of *People* v. *Funk, supra.*

■ There is nothing in the record indicating the kind or amount of damage suffered by Dunn nor how the same was incurred. The most that can be drawn from the record is that Dunn was making a claim against respondent for injuries received which he, Dunn, was willing to settle for fifteen hundred dollars.

We think the inference which is unavoidably to be drawn from the whole record is that the damages which Dunn was claiming and which formed the basis of the condition in question were not those resulting from respondent's failure to stop and render assistance as required by the statute. Therefore it is clear that this condition was not one of restitution in any proper sense of the word. Is it illegal and void as being against public policy as claimed by the respondent?

■ The term "public policy," being of such vague and uncertain meaning, and of such variable quantity, has frequently been said not to be susceptible of exact or precise definition. 50 C. J. 857. And see *Osgood* v. *Central Vt. Ry. Co.,* 77 Vt. 334, 343, 60 Atl. 137, 70 L. R. A. 930.

It is stated in *State* v. *Bowman,* 184 Mo. App. 549, 553, 170 S. W. 700, 701: "that one of the best definitions, perhaps, is that of Justice Story, which applied the term to that which 'conflicts with the morals of the time, and contravenes any established interest of society.'"

■ Our Court in the construction of certain contracts has made the test similar to the above definition as it has held that such contracts were not illegal and void as being against public policy unless it could be said that they were injurious to the interests of the public or contravened some established interest of society. *Bessette* v. *St. Albans Co-op. Creamery,* 107 Vt. 103, 111, 176 Atl. 307; *Osgood* v. *Central Vt. Ry. Co., supra.* This test we adopt and apply here.

■ The condition in question and the making of it was not wholly of private concern between the State and the respondent. It went beyond this and affects the interests of the people of the

State as a whole. For here the right of a court to act in a certain way is in question and not merely the right of an individual. Such a right is one of public interest and was exercised here in a manner injurious to that interest.

We hold that the said condition is illegal and void as being against public policy.

It is shown by the record that the judgment of June 17, 1938, was based both upon the violation of the condition of payment and of the intoxication condition. Inasmuch as this latter condition is legal we are faced with the question of whether the breach of it can support the judgment.

From the findings it clearly appears that the main reason for placing the respondent on probation and continuing the term thereof for so long a time, nearly nine years, was to collect money for Dunn by aid of the court order. It is not necessary to review the facts found to demonstrate that the judgment of June 17, 1938, was based largely upon the breach of the illegal condition. The legal condition cannot be separated from the illegal so as to support the judgment.

This is in accord with the familiar rule in the law of contracts that when any portion of the consideration of a contract is illegal the whole contract is illegal and void and cannot be enforced. *Dow* v. *Taylor,* 71 Vt. 337, 45 Atl. 220, 76 A. S. R. 775; *Storer* v. *Haskell,* 50 Vt. 341; *Woodruff* v. *Hinman,* 11 Vt. 592, 34 A. D. 712.

The judgment must fall unless sustained by the finding that the respondent agreed to the payment condition.

But the court had no jurisdiction to make the judgment order of June 17th.

Jurisdiction is not only the power to hear and determine a cause but also the power to render the particular judgment which was rendered and to carry the same into effect. See cases collected in Words and Phrases under title of ''Jurisdiction.''

This rule was recognized in the case of *Ex parte Reed,* 100 U. S. 13, 25 L. ed. 538, where the Court in the course of its opinion said [page 23] :

> ''We do not overlook the point that there must be jurisdiction to give the judgment rendered, as

well as to hear and determine the cause. If a magistrate having authority to fine for assault and battery should sentence the offender to be imprisoned in the penitentiary, or to suffer the punishment prescribed for homicide, his judgment would be as much a nullity as if the preliminary jurisdiction to hear and determine had not existed. Every act of a court beyond its jurisdiction is void.''

This requirement has been recognized by our Court in the definition of ''jurisdiction'' given by Tyler, J., in the case of *State* v. *Wakefield*, 60 Vt. 618, 622, 15 Atl. 181, 183, as follows:

''Jurisdiction is defined to be the authority by which judicial officers take cognizance of and decide cases; power to hear and determine a cause; the right of a judge to pronounce a sentence of the law on a case or issue before him, acquired through due process of law. Bouvier's Law Dict.; *Perry* v. *Morse*, 57 Vt. 509. Jurisdiction, in order to be complete, must be of the process, the person and the subject matter.''

The court had no power to render the judgment in question as it was based on the illegal condition and consequently it had no jurisdiction to render or enforce the same. It is *coram non judice,* and void.

Such judgment cannot be made good nor jurisdiction conferred by consent, agreement or waiver. Because where no jurisdiction exists by law, it cannot be conferred by consent. *Fuller & Co.* v. *Morrison et al., supra; Watson* v. *Payne,* 94 Vt. 299, 111 Atl. 462; *Miner's Executrix* v. *Shanasy et al., supra.* This rule was apparently recognized in the case of *People* v. *Funk, supra.*

Although the exception of the respondent, relating to jurisdiction, in words, only goes to the lack of the same in making the condition in question, in effect it goes to lack of jurisdiction to render the judgment. For the lack of power to make the condition is the reason for the want of jurisdiction to render the judgment. This exception did call to our attention a juris-

dictional question which should be determined when raised at any stage of the proceedings.

▮ Moreover, as the record brought to our attention an apparent lack of jurisdiction on the part of the court below to render the judgment in question, it became our duty to consider and determine this question regardless of the manner in which it was raised. *Lamson* v. *Worcester,* 58 Vt. 381, 4 Atl. 145; *Thayer* v. *Montgomery,* 26 Vt. 491; *Glidden* v. *Elkins,* 2 Tyler 218; 4 C. J. 1162, § 3179; 15 C. J. 850, note 35.

*Judgment reversed. Sentence set aside and respondent discharged.*

SHERBURNE, J. (dissenting). I regret that I am unable to concur with the majority.

The power conferred upon a court by P. L. 8872 to place a respondent upon probation ''upon such conditions and for such time as it may prescribe, or until further order of the court'' gives a wide discretion. According to the analogy of a conditional pardon it is limited only by the proviso that the conditions must not be illegal, immoral or impossible of performance. *In re Conditional Discharge of Convicts,* 73 Vt. 414, 419, 420, 51 Atl. 10, 56 L. R. A. 658. It is said in *In re Gordon,* 105 Vt. 277, 279, 165 Atl. 905, that in addition to these requirements it must not be unreasonable. The statute is not penal in character, but is designed to be the means of reformation and rehabilitation of the wrongdoer, and, in a proper case, of relieving him against the stigma of imprisonment, *In re Hall,* 100 Vt. 197, 202, 136 Atl. 24; but it may be so exercised as to be the instrument of injustice. Granted that restitution may be made a condition of probation, the practice of exacting the payment of unliquidated damages claimed to have been sustained by the negligence of the respondent should be indulged with extreme caution. There may well be criminal, but not civil liability. No matter what fault may attach to the respondent, the injured party may be barred from recovery by his contributory negligence, or for some other legal reason. Therefore, to force a settlement by the threat of imprisonment, if such condition is not met, may be to deprive the respondent of the right to present his defense and have its sufficiency passed upon in a civil court in an action between the

parties concerned. The consent of the respondent is not conclusive of the fact of his liability, for who would not consent under such circumstances? He is, however, bound thereby. *In re Conditional Discharge of Convicts, supra,* p. 423, 51 Atl. 10. There is force in the contention that such procedure amounts to the employment of the criminal process of the State as the means of the collection of a civil claim, so it should be rarely employed, and, when used, great care should be exercised to see that the respondent freely consents and to ascertain that he is solely at fault.

The offense of which the respondent was adjudged guilty was that of leaving the scene of an accident, under P. L. 5156, and this section applies not only to the person causing the accident, but to any person involved in it; in other words, to the innocent as well as to the guilty participant, and so the conviction was not a necessary adjudication of blame for the accident. It is true that the record fails to show a connection between the offense and the cause of the accident, but this is not enough, because, according to our familiar rule, it is incumbent upon the appealing party to produce a record in this Court which affirmatively shows that error has been committed below. *Higgins* v. *Metzger,* 101 Vt. 285, 296, 143 Atl. 394. The record is to be construed against him. *Bank* v. *Bertoli,* 88 Vt. 421, 425, 92 Atl. 970. We must indulge every reasonable intendment in favor of the judgment of the trial court, and it cannot be reversed unless all such intendments are against it. *Manley Bros.* v. *Somers,* 100 Vt. 292, 297, 137 Atl. 336; *Biow Co.* v. *Cohen,* 99 Vt. 78, 80, 81, 130 Atl. 589, 52 A. L. R. 586, and cases cited. The court below was a municipal court, but the rulings of that court are entitled to the same intendments as those of the county court. *State* v. *Donaluzzi,* 94 Vt. 142, 148, 109 Atl. 57. So we cannot assume, in the absence of an affirmative showing to the contrary, that the court in this instance imposed any duress upon the respondent to accept the condition, or that it was not informed of the circumstances, and that the departure from the scene of the accident was not so related to fault on the part of the respondent that no close connection between the two could be found. The fact of flight, indeed, is some evidence of guilt, though not conclusive. But it does not tend to show that the injured party was without fault. *Wellman* v. *Wales,* 97 Vt. 245,

254, 122 Atl. 659. Moreover, for aught that appears, the injuries suffered may have been aggravated by the failure of the respondent to stop and render such assistance as may have been reasonably necessary, according to the provisions of the statute. It is significant that nowhere, not even here, does it appear that the respondent has ever claimed that he was not at fault.

The sentence was within the limits fixed by the statute, and no attempt has been made to explain the circumstances of the offense. The sum involved here would import a rather serious accident. Leaving the scene of an accident under such circumstances indicates a degree of moral turpitude, as one will not flee but will stop to render assistance, unless he is a coward or lacks all regard for the suffering and inconvenience of others. We cannot disregard the presumption of regularity in the proceedings below and assume that the sentence was excessive, or that it was made unduly severe so as to induce the respondent to accept this condition.

Upon the authority of the cases cited in the majority opinion there would be no question about the condition as to restitution imposed here had the respondent been convicted of careless and negligent operation of his automobile. But the majority have laid down the rule that a condition of restitution can only be prescribed when the loss sustained is a direct consequence of the particular crime for which the respondent stands convicted. I agree to this with this limitation, that when the offence for which the respondent stands convicted is closely related to an offense whereby another suffers injury, the court has power to prescribe a condition of restitution for such injury. The Georgia case of *Roberts* v. *State,* cited by the majority, sustains this contention. *People* v. *Funk,* cited by the majority, was governed by a limiting statute and is of no help to them.

As we must presume that the court considered that the respondent was at fault I can see nothing about this condition, under the circumstances, that is against public policy under the definitions of that term as given in the majority opinion. The two offenses, that of negligent driving and that of leaving the scene of the accident, make up but one chain or sequence of events. As the negligent act may have been one of mere momentary inattention, the prosecuting officer may have only prosecuted for the offense of leaving the scene of the accident, because

that offense impressed him as being the more shocking to the public sense of right and wrong, and because he thought that the ends of justice could be met by the punishment imposed for that offense. I cannot see anything about the procedure followed, assuming as we must that the respondent freely consented and that the court ascertained that he was solely at fault, that is injurious to the interests of the public, or which contravenes the established interests of society, in letting the respondent go upon probation upon the condition that he requite his own wrong. To the contrary, I think that such a disposition meets with general public approval in conformity with the morals of our time.

The only question here, assuming it to be properly before us, is whether the court exceeded its jurisdiction in prescribing the condition of payment. In view of the broad powers given by the statute, I think this must be answered in the negative. It is not illegal, immoral, impossible of performance, or unreasonable, so far as appears.

I would overrule the exceptions.

MOULTON, C. J., joins in this dissent.