NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2025 VT 39

No. 24-AP-191

| | |
|---|---|
| Julio Davila | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Washington Unit, |
| | Civil Division |
| | |
| Nicholas Deml | March Term, 2025 |

Timothy B. Tomasi, J.

Matthew F. Valerio, Defender General, Annie Manhardt[1] and Dawn M. Seibert, Prisoners'
 Rights Office, Montpelier, for Plaintiff-Appellant.

Charity R. Clark, Attorney General, Montpelier, and Robert C. Menzel, Jr., Assistant Attorney
 General, Waterbury, for Defendant-Appellee.


PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.


¶ 1.     **EATON, J.**  Plaintiff Julio Davila appeals a trial court's order granting summary judgment for the State and denying him credit toward his Vermont sentence for 490 days that he spent incarcerated in Massachusetts during a period when he faced charges in that jurisdiction. Plaintiff contends that he is entitled to credit towards his Vermont sentence under 28 V.S.A. § 808e(c), which prohibits sentence credit for any days that a warrant for an individual who has absconded from furlough is outstanding. In the alternative, plaintiff argues that he is entitled to

---

[1] Attorney Annie Manhardt was on the brief and Attorney Dawn M. Seibert substituted as counsel.

credit under 13 V.S.A. § 7031(c), which provides credit to individuals who are awaiting transportation to the location they are to serve their sentence. We affirm.

¶ 2.     Following a 2014 conviction, plaintiff was released from prison on furlough in October 2021. While on furlough, plaintiff's conditions of release required him to remain under supervision in Vermont. However, in April 2022, plaintiff absconded from furlough when he failed to report to a meeting with his furlough officer and was unable to be located or reached by phone. As a result, the Department of Corrections (DOC) issued a "Return on Mittimus Request" on April 5, 2022, which instructed law enforcement agencies to arrest plaintiff. Shortly thereafter, on April 19, 2022, the DOC Commissioner issued an arrest warrant for plaintiff.

¶ 3.     Four months later, on August 10, 2022, a law enforcement officer in Deerfield, Massachusetts pulled plaintiff over in response to a report of a person driving erratically. When checking plaintiff's driver's license, the officer learned that it had been suspended and that plaintiff had an active warrant issued by the Vermont DOC. The officer then arrested plaintiff, transported him to the local barracks, and booked him. A subsequent search of plaintiff's vehicle uncovered six plastic baggies of a white substance and a digital scale.

¶ 4.     Plaintiff was charged in Massachusetts with driving with a suspended license and cocaine trafficking. The night of plaintiff's arrest, a Massachusetts court clerk ordered plaintiff held without bail on both the Vermont warrant and Massachusetts charges.[2] On September 22, 2022, while incarcerated in Massachusetts, plaintiff signed a waiver of extradition to Vermont. The record indicates that plaintiff was subsequently arraigned on the Massachusetts criminal

---

[2] The parties' statements of undisputed material facts differed slightly in their descriptions of why the Massachusetts court clerk ordered plaintiff held without bail. In his statement of undisputed facts, plaintiff stated that he was held without bail "due to the Commissioner's Warrant." In contrast, the State averred that plaintiff was held without bail "based, in part, on the Vermont warrant" in addition to the Massachusetts charges. At oral argument, plaintiff's counsel clarified that plaintiff was held in Massachusetts on both the Vermont warrant and the Massachusetts charges.

charges on October 28, 2022, and the court set his bail at $20,000.[3]  Plaintiff did not post bail and remained incarcerated in Massachusetts.

¶ 5.     In late 2023, plaintiff filed a motion in the Massachusetts trial court to suppress the evidence obtained from his car as a result of the August 10, 2022, traffic stop.  The Massachusetts court granted the motion on November 27, 2023, and released plaintiff on his own recognizance on December 12, 2023.[4]  The next day plaintiff was transported from Massachusetts to Southern State Correctional Facility in Vermont.

¶ 6.     Following plaintiff's return to Vermont, the DOC added a total of 616 days to his maximum release date.  In arriving at that figure, the DOC did not credit plaintiff for the 490 days he had spent incarcerated in Massachusetts.  Instead, it concluded that he had been on "absconded" status from April 5, 2022, when the Return on Mittimus Request was issued, until he returned to Vermont on December 13, 2023.

¶ 7.     Throughout this series of events, plaintiff argued that he should receive credit towards his Vermont sentence for time he spent incarcerated in Massachusetts.  In June 2023, plaintiff submitted a grievance appeal to the Vermont DOC requesting that he be given credit towards his Vermont sentence for the time he was serving in Massachusetts.  In that grievance appeal, plaintiff argued that he was no longer "absconded," and that the DOC should give him

---

[3]  At oral argument, plaintiff's counsel stated that the record was incorrect regarding when the Massachusetts court set plaintiff's bail at $20,000.  According to plaintiff's counsel, the Massachusetts trial court immediately imposed a $20,000 bail for both the Vermont warrant and the Massachusetts charges on August 10, 2022, when plaintiff was first arrested.  The date the Massachusetts court imposed the $20,000 bail is not dispositive to the legal questions at hand.  See In re Fitzsimmons, 2013 VT 95, ¶ 13, 195 Vt. 94, 86 A.3d 1026 ("An issue of fact is material only if it might affect the outcome." (quotation omitted)).  As described below, whether and when plaintiff was held with or without bail in Massachusetts is immaterial to whether he was "awaiting transportation" under 13 V.S.A. § 7031(c) because he remained incarcerated in Massachusetts pending the resolution of his Massachusetts charges.

[4]  Following an interlocutory appeal of the suppression decision and denial of that appeal, the Massachusetts court dismissed the Massachusetts charges against plaintiff on January 9, 2024.

credit towards his Vermont sentence from September 22, 2022, the date he waived extradition. The DOC rejected plaintiff's request, stating that plaintiff was "not currently in custody or under the supervision of the Department."

¶ 8.    Plaintiff then filed a complaint for review of governmental action pursuant to Vermont Rule of Civil Procedure 75 in the Washington Civil Division. He asked the court for a writ of mandamus directing the DOC to credit him with time towards his Vermont sentence from September 22, 2022, onwards. Both plaintiff and the DOC moved for summary judgment. In his summary judgment motion, plaintiff argued that he was entitled to credit towards his Vermont sentence not just since he waived extradition on September 22, 2022, but beginning on August 10, 2022, when he was arrested in Massachusetts.[5] The court granted summary judgment to the DOC, concluding that plaintiff was not entitled to credit towards his Vermont sentence for any of the time he spent incarcerated outside of Vermont. This appeal followed.

¶ 9.    "We review a grant of summary judgment de novo, using the same standard as the trial court." Hier v. Slate Valley Unified Sch. Dist., 2025 VT 2, ¶ 8, __ Vt. __, 331 A.3d 1113 (quotation omitted). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a).

¶ 10.    The sole issue in this appeal is whether plaintiff is entitled to credit towards his Vermont sentence under Vermont statutes for the time he spent incarcerated in Massachusetts. Statutory interpretation "is a question of law which we review de novo." State v. Eldredge, 2006 VT 80, ¶ 7, 180 Vt. 278, 910 A.2d 816. "Our goal is to give effect to the Legislature's intent, so we first look at the plain, ordinary meaning of the statute" and "[i]f the language is clear, we apply

---

[5]    Given our decision that plaintiff is not entitled to credit towards his Vermont sentence for any time served in Massachusetts, it is unnecessary to consider the relevance of plaintiff's waiver of extradition and whether plaintiff would have been entitled to credit for the time he was held in Massachusetts prior to his waiver of extradition.

the statute according to its plain meaning." State v. Bruyette, 2021 VT 43, ¶ 17, 215 Vt. 65, 257 A.3d 837 (quotation omitted). Plaintiff argues that he is entitled to credit for the time he spent incarcerated in Massachusetts under either 28 V.S.A. § 808e(c) or 13 V.S.A. § 7031(c), or both. We address each argument in turn.

¶ 11. Section 808e of Title 28 addresses "[a]bsconding from furlough." The statute defines the term "absconded" and allows the Commissioner of Corrections to issue a warrant for the arrest of a person who has absconded from furlough. 28 V.S.A. §§ 808e(a), (b). It dictates that "[a] person for whom an arrest warrant is issued [as a result of his absconding from furlough] shall not earn credit toward service of the person's sentence for any days that the warrant is outstanding." Id. § 808e(c). Both parties agree that, pursuant to this statute, plaintiff was not entitled to credit towards his sentence between April 5, 2022, when plaintiff first absconded, and August 10, 2022, when plaintiff was arrested in Massachusetts. However, plaintiff asserts he should be given sentence credit from his arrest in Massachusetts on August 10, 2022, onwards, arguing that 808e(c) affirmatively confers sentence credit when a warrant is no longer outstanding by virtue of an arrest having been made.[6]

¶ 12. The parties are correct that the language in § 808e(c) prohibits sentence credit when a warrant is outstanding and, as a result, that plaintiff is not entitled to credit between April 5, 2022, and August 10, 2022. 28 V.S.A. § 808e(c) (stating person "shall not earn credit" when warrant is outstanding). Plaintiff is also not entitled to credit under § 808e(c) from August 10, 2022, to December 12, 2024, because the language of § 808e(c) does not address when sentence credit resumes. Id. (omitting any discussion of resuming sentence credit once warrant is no longer

---

[6] At oral argument, the State argued that the warrant continued to be outstanding until December 13 when plaintiff was returned to Vermont. In contrast, plaintiff argues that a warrant was executed upon his arrest on August 10, 2022. We do not need to reach the issue of when the warrant became no longer outstanding because even if it was no longer outstanding beginning August 10, 2022, plaintiff would not be entitled to credit towards his Vermont sentence under either of his arguments.

outstanding).  As we have frequently articulated, we presume that the Legislature "intended the plain, ordinary meaning of the adopted statutory language" and when a "statute is unambiguous and its words have plain meaning, we accept the statute's plain meaning as the intent of the Legislature and our inquiry proceeds no further."  Wesco, Inc. v. Sorrell, 2004 VT 102, ¶ 14, 177 Vt. 287, 865 A.2d 350 (citation omitted).  The plain language in § 808e(c) merely prohibits sentence credit when a warrant is outstanding; it is silent on providing any right to sentence credit when a warrant is no longer outstanding.  We presume that this omission was intentional. Therefore, we decline to expand § 808e(c) beyond the express terms of the statute.

¶ 13.  Our interpretation is further supported by a contrast between § 808e(c) and other statutes that affirmatively confer sentence credit.  For example, 28 V.S.A. §§ 726 and 723 explicitly provide when credit can be given to individuals on furlough.  Specifically, § 726 states that "[e]ach day an offender is supervised in a conditional reentry program shall be counted as one day served for the total effective sentence."  Similarly, § 723 permits the DOC to "release [an individual] from a correctional facility to participate in a reentry program while serving the remaining sentence in the community" if the individual meets certain conditions.  These examples demonstrate that the Legislature intended to craft statutes that outline specific requirements for when credit should be affirmatively given.  Based on its plain language, § 808e is not one of them. The Legislature would not and has not left such an important issue as sentencing credit to an entitlement by silence.

¶ 14.  In the alternative, plaintiff argues that he is entitled to credit under 13 V.S.A. § 7031(c).  Broadly, § 7031 dictates the forms of sentencing, when sentences begin, and sentence maximums and minimums.  Specifically, § 7031(c) states that if a convicted person

> is committed to a jail or other place of detention to await transportation to the place at which his or her sentence is to be served, his or her sentence shall commence to run from the date on which he or she is received at the jail or the place of detention.

Plaintiff argues that he is entitled to credit towards his Vermont sentence under this statute for the time he spent incarcerated in Massachusetts because, according to plaintiff, he was sitting "in jail in Massachusetts awaiting transport to Vermont" during that time. This argument misinterprets the term "awaiting transportation" in § 7031(c).

¶ 15. The term "await" is not defined in the statute. See 13 V.S.A. §§ 7030-7045 (omitting any definition of "awaiting"). Where the "statutory language is undefined, we accord the term its plain and ordinary meaning, which may be obtained by resorting to dictionary definitions." Doe v. Camacho, 2024 VT 72, ¶ 35, __ Vt. __, 329 A.3d 156 (quotation omitted). Black's Law Dictionary does not define the terms "await" or "wait." However, the Merriam Webster dictionary defines the term "await" as "to wait for." Await, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/await [https://perma.cc/G38Q-D2XS]. It also defines the term "wait" in a number of ways, including "to remain stationary in readiness or expectation," and "to be ready and available." Wait, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/wait [https://perma.cc/HGG3-9HKJ]. None of these definitions correspond to plaintiff's situation from August 10, 2022, to December 12, 2023. Plaintiff was not "ready" to be transported to Vermont, he was not imminently "expecting" to be transported to Vermont, and he was not "available" to be transported to Vermont, because any attempt by the DOC to take custody of plaintiff during that period would have been stymied by Massachusetts's superior claim to jurisdiction over its prisoner. See U.S. v. Lanza, 260 U.S. 377, 385 (1922) (describing general rule that sovereign "which first gets jurisdiction may first exhaust its jurisdiction to the exclusion of the other"); U.S. v. Cole, 416 F.3d 894, 897 (2005) ("[P]rimary jurisdiction over a person is generally determined by which one first obtains custody of, or arrests, the person."). Plaintiff was ready and available to be moved to Vermont custody, and therefore became entitled to receive credit towards his Vermont sentence pursuant to 13 V.S.A § 7031, on the day after he was released on his own recognizance by Massachusetts. Therefore, the lower

court correctly concluded that plaintiff was entitled to credit towards his Vermont sentence beginning on December 13, 2023, when he was transported to the Southern State Correctional Facility in Vermont.

¶ 16.    While not binding on this Court, federal courts have similarly interpreted the term "awaiting transportation" in an analogous federal statute, which dictates that federal sentences "commence[] on the date the defendant is received in custody <u>awaiting transportation</u> to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served."  18 U.S.C. § 3585(a) (emphasis added).  When interpreting this statute, federal circuit courts typically look to whether and when a state court relinquishes primary jurisdiction over a defendant—and only when that occurs do they consider a defendant to be in federal custody or "awaiting transportation" to the federal detention facility.  See, e.g., <u>Elwell v. Fisher</u>, 716 F.3d 477, 481 (8th Cir. 2013) (explaining primary jurisdiction doctrine).  For example, according to the Ninth Circuit, a defendant was not "awaiting transportation" when "he remained in the County jail under the jurisdiction of the State Court awaiting disposal of the State proceedings."  <u>Gunton v. Squier</u>, 185 F.2d 470, 471 (9th Cir. 1950); see also <u>Pope v. Perdue</u>, 889 F.3d 410, 416 (7th Cir. 2018) (requiring credit when defendant was "awaiting transportation" once state government relinquished primary custody over defendant).  Similarly, the Fifth Circuit explained that when a defendant was taken to a state jail after being tried in federal court, the defendant entered the state jail "not to await transportation to the federal penitentiary but to await trial in the State court."  <u>Zerbst v. McPike</u>, 97 F.2d 253, 254 (5th Cir. 1938); see also <u>Lugo v. Hudson</u>, 785 F.3d 852, 855 (2d Cir. 2015) (describing defendant entitled to federal sentence credit only once released from state custody).  These interpretations of the term "awaiting transportation" in an analogous federal statute align with our own and bolster our conclusion that plaintiff should not receive credit for the time he spent incarcerated in Massachusetts.

8

¶ 17. On appeal, plaintiff argues that the lower court's ruling undermined the legislative purpose behind 13 V.S.A. § 7031(b), which is "to ensure that offenders unable to make bail do not serve a longer sentence than more affluent defendants who are able to make bail and avoid pretrial incarceration." State v. Blondin, 164 Vt. 55, 57, 665 A.2d 587, 589 (1995). According to plaintiff, the ruling punishes him with an additional 490 days added to his Vermont sentence due to his inability to post bail in Massachusetts. Had he been able to post bail, his argument goes, he would have immediately been returned to Vermont and would have immediately started earning credit towards his Vermont sentence. Plaintiff argues that this Court should adopt the rule articulated in Martin v. Pa. Bd. of Prob. & Parole, 840 A.2d 299, 309 (Pa. 2003), in which the Supreme Court of Pennsylvania held that "all time spent in confinement must be credited to either the new sentence or the original sentence" such that "the indigency of a detainee in failing to satisfy the requirements for bail is not determinative as to whether the offender receives credit for time served."

¶ 18. Whatever the merits of this argument, we will not address it because plaintiff did not preserve this argument by raising it below. Plaintiff neither provided the necessary factual basis for this argument nor made this argument to the trial court. Plaintiff's statement of material facts in support of his summary judgment motion makes no mention of his inability to post bail. Similarly, plaintiff's motion for summary judgment itself makes no mention of his inability to post bail and puts forward no legal argument concerning his indigency. "The court need consider only the materials cited in the required statements of fact." V.R.C.P. 56(c)(5). Further, "we have consistently held that we will not address issues that were not properly preserved." Pratt v. Pallito, 2017 VT 22, ¶ 16, 204 Vt. 313, 167 A.3d 320. "To properly preserve an issue for appeal a party must present the issue with specificity and clarity in a manner which gives the trial court a fair opportunity to rule on it." Vt. Transco LLC v. Town of Vernon, 2014 VT 93A, ¶ 16, 197 Vt. 585, 109 A.3d 423 (quotation omitted). The "purpose of the [preservation] rule is to ensure that the

original forum is given an opportunity to rule on an issue prior to our review." Pratt, 2017 VT 22, ¶ 14 (alteration in original).

¶ 19. We conclude that plaintiff is not entitled to credit toward his Vermont sentence for the 490 days he spent incarcerated in Massachusetts pending his release from Massachusetts custody.

Affirmed.

FOR THE COURT:

_____
Associate Justice

¶ 20. **WAPLES, J., dissenting.** After plaintiff Julio Davila absconded from furlough in the spring of 2022, the Vermont Department of Corrections issued a warrant for his arrest. On August 10, 2022, he was arrested on that warrant in Massachusetts. Plaintiff was incarcerated there from his arrest until December 13, 2023, when he was returned to custody in Vermont. Though plaintiff was incarcerated for 490 days in Massachusetts, the DOC refused to give him credit towards service of his Vermont sentence for that time. Because I believe that 28 V.S.A. § 808e(c) requires the DOC to provide credit towards plaintiff's sentence after the warrant for his arrest was no longer outstanding, I respectfully dissent.

¶ 21. Title 28 sets forth a comprehensive statutory scheme governing furlough. When an incarcerated individual is on furlough, the person is still under "confinement," but is granted a "permitted extension of the limits of the place of confinement." 28 V.S.A. § 808(c). The statute establishes several different programs under which the DOC may grant furlough. See, e.g., id. §§ 723-724 (setting forth availability and requirements for "community supervision furlough"); id. § 808 (detailing "temporary furlough"); id. § 808a (detailing "treatment furlough").

10

¶ 22.    Each day a person is in the community on furlough "shall be counted as one day served for the total effective sentence." Id. § 726. This aligns with the statutory scheme because people on furlough are still under "confinement," serving their sentences under the supervision of the DOC. Id. § 808(c).

¶ 23.    As part of the statutory scheme, the Legislature also enacted procedures for when an offender has absconded from furlough. A person absconds from furlough if they have "not met supervision requirements, cannot be located with reasonable efforts, and [have] not made contact with" DOC staff within set times, or if they flee. 28 V.S.A. § 722. Section 808e(b) explains that the "Commissioner of Corrections may issue a warrant for the arrest of a person who has absconded from furlough." Importantly here, the statute also explains how credit towards service of a sentence is calculated when an offender absconds from furlough: "[a] person for whom an arrest warrant is issued pursuant to this section shall not earn credit toward service of the person's sentence for any days that the warrant is outstanding." Id. § 808e(c).

¶ 24.    Plaintiff contends that he is entitled to credit towards his Vermont sentence under 28 V.S.A. § 808e(c) for the 490 days he spent incarcerated in Massachusetts. In construing a statute, our primary objective is to "effectuate the Legislature's intent." Shires Hous., Inc. v. Brown, 2017 VT 60, ¶ 9, 205 Vt. 186, 172 A.3d 1215 (quotation omitted). "The first step in doing so is to examine the plain language of the statute." T.C. v. L.D., 2020 VT 19, ¶ 4, 211 Vt. 582, 229 A.3d 77. Where statutory language is undefined, we may resort to dictionary definitions to give terms their plain and ordinary meaning. Human Rts. Def. Ctr. v. Correct Care Sols., LLC, 2021 VT 63, ¶ 16, 215 Vt. 362, 263 A.3d 1260. Moreover, "[a]ll relevant parts of the applicable statutory scheme are to be construed together to create, if possible, a harmonious whole." Agency of Nat. Res. v. Parkway Cleaners, 2019 VT 21, ¶ 16, 209 Vt. 620, 210 A.3d 445 (quotation omitted).

11

¶ 25. Section 808e(c) sets forth an exception to the general rule of 28 V.S.A. § 726, providing that "[e]ach day an offender" is on furlough "shall be counted as one day served for the total effective sentence." Where a person has absconded from that furlough, and thus no longer under DOC supervision, that person "shall not earn credit toward service of the person's sentence." Id. § 808e(c). This statutory bar on accumulating credit is lifted when the arrest warrant is no longer "outstanding." Id. Black's Law Dictionary defines an "outstanding warrant" as "an unexecuted arrest warrant." Warrant, Black's Law Dictionary (12th ed. 2024). An arrest warrant is executed when the subject of the warrant is arrested. In re Gordon, 105 Vt. 277, 279, 165 A. 905, 905 (1933). Plaintiff was arrested on a Vermont warrant on August 10, 2022, and remained in custody in Massachusetts until he was returned to Vermont on December 13, 2023. From the time of that arrest, his warrant was no longer "outstanding." That plaintiff was charged with additional crimes in Massachusetts is of no import under this statute, which looks only at whether the Vermont warrant was "outstanding." By the plain language of 28 V.S.A. § 808e(c), plaintiff is entitled to credit for time served after he was arrested.

¶ 26. I disagree with the majority's assertion that § 808e(c) is silent on providing credit when a warrant is no longer outstanding. See supra, ¶ 12. In my view, the statutory scheme establishes a clear right to credit towards a sentence when an offender is being supervised—that is, an offender gets sentence credit either when on furlough, 28 V.S.A. § 726 (counting furlough days when "offender is supervised"), or after a warrant to return an offender from absconding from furlough is no longer outstanding, id. § 808e(c). The Legislature was not silent on this issue. Reading § 808e(c) as part of the whole statutory scheme evidences a legislative intent for offenders who abscond from furlough and are then later arrested and detained to earn credit towards their sentences for any time spent incarcerated following that arrest.

¶ 27. Section 808e(c) is clear on its face[7] that plaintiff is entitled to credit toward service of his sentence once his arrest warrant was no longer outstanding. I would thus order the DOC to allocate credit to plaintiff's Vermont sentence for the 490 days he spent incarcerated in Massachusetts after which the warrant was no longer outstanding. Accordingly, I respectfully dissent.

¶ 28. I am authorized to state that Chief Justice Reiber joins this dissent.

_____
Associate Justice

---

[7] Though no party here raised the issue of deference, if a "statute is silent or ambiguous and an agency charged with enforcing the statute has interpreted it," we will defer to the agency interpretation of the statute "within its area of expertise." Shires Hous., 2017 VT 60, ¶ 9. Because I do not see this statutory scheme as either ambiguous or silent on the issue, no deference need be given to the DOC.